UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

EDWARD CRESPIN and
JANIS CRESPIN,                                                Case No. 17-11234 ta13

        Debtors.

## MEMORANDUM OPINION

Before the Court is David and Dori Sanderses' motion for relief from the automatic stay, filed to allow the state court to determine the total amount of punitive damages, costs, attorney's fees, and interest owed by Debtors to the Sanderses. Having reviewed the motion and Judge Robert H. Jacobvitz's 2016 opinion in Debtors' previous chapter 7 case, and having heard the arguments of counsel, the Court finds insufficient cause to modify the automatic stay.

### I.     FACTS

The Court incorporates all of Judge Jacobvitz's findings of fact in *Sanders v. Crespin (In re Crespin)*, 551 B.R. 886 (Bankr. D.N.M. 2016). Among the relevant facts are:

On July 24, 2001, Jennifer Montoya and Debtors signed a purchase agreement, under which Debtors bought a mobile home and real property from Ms. Montoya. The sale was subject to a $106,083.80 note and mortgage that encumbered the home and property.

Debtors decided to sell the mobile home (but not the real property) in late 2006. They asked their mortgage servicer, Green Tree Financial Servicing Company, if the mortgage could be released as part of the sale. Green Tree advised Debtors that the mortgage could only be released when the debt was paid in full.

Debtors wanted to obtain a construction loan large enough to build their "dream home" on the real property, and also to pay off the existing note and mortgage. However, Debtors had poor

credit. To have any realistic chance of obtaining such a loan, they needed to improve their credit score substantially. Debtors intended to retain a company to help them repair their credit. They never did, their credit score never improved, and Debtors never got a construction loan.

Nevertheless, in December 2006, Debtors listed the mobile home for sale for $45,000. The Sanderses responded to the listing. The parties later agreed on a sale price of $45,000, with a $500 down payment. The purchase price was not nearly enough to pay off the note.

The parties completed the purchase on April 24, 2007, at a credit union in Rio Rancho, New Mexico. The purchase contract stated that "Seller warrants it has good and legal title to said property, full authority to sell said property, and that said property sold by warranty bill of sale free and clear of all liens, encumbrances, liabilities and adverse claims of every nature and description whatsoever." The parties also signed a receipt, by which Debtors acknowledged receipt of $44,500. The receipt provides "[t]he parties agree to transfer title within 60 days." Debtors added this language to conceal the fact that title to the mobile home was encumbered, and to allow them time to obtain a new loan. The Sanderses did not order a title search because they thought such searches only applied to real property, not to movable property like a mobile home.

By the summer of 2007, the Sanderses took possession of the mobile home and moved it to some real property they owned. When they had not received title to the mobile home by late fall 2008, they became worried. They searched the property records for the mobile home and discovered the mortgage.

The Sanderses tried unsuccessfully to negotiate with Green Tree. On December 22, 2009, the Sanderses sued Debtors in state court, asserting claims for specific performance, breach of contract, fraudulent misrepresentation, negligent misrepresentation, and violation of the New Mexico Unfair Practices Act. Debtors did not answer the complaint. On November 18, 2010, the

-2-
Case 17-11234-t13    Doc 76    Filed 02/20/18    Entered 02/20/18 15:18:58 Page 2 of 9

state court entered a default judgment against Debtors. The default judgment included the following:

> The Court entered into its Entry of Default on July 14, 2010, finding that the Defendants failed to answer the Plaintiff's Complaint for Specific Performance, Breach of Contract, Fraudulent Misrepresentation, Negligent Misrepresentation, Violation of the New Mexico Unfair Practices Act, and Punitive Damages, and have no meritorious defense in failing to answer.

The state court awarded the Sanderses $162,290.00 ($45,000 in compensatory damages; $21,832.45 in pre-judgment interest; a $282 filing fee; a $217.05 service of process fee; $4,958.50 in attorney's fees; and $90,000 in treble damages, awarded under the New Mexico Unfair Practices Act).

Six months later, Debtors, represented by counsel, filed a motion to set aside the default judgment. The state court judge denied the motion. The next day, the Sanderses served writs of garnishment on Sandia Area Credit Union and Debtors' respective employers. Debtors, acting *pro se*, filed a second motion to set aside the default judgment, which also was denied.

Debtors made payments to Green Tree totaling $77,077 between April 2007 and December 2014. Debtors stopped making payments after the Sanderses garnished their bank account and wages. As of February 20, 2015, the balance of the Green Tree loan was $84,478.75.

Debtors used the Sanderses' $45,000 purchase price to make payments on the note and to pay other expenses. Debtors made efforts to improve their creditworthiness so they could get a construction loan and pay off the Green Tree loan. Debtors abandoned this effort in late 2008 because of continuing financial problems. They never paid off the Green Tree loan.

Debtors filed a chapter 7 case on December 31, 2014. They received a discharge on April 21, 2015, subject to a pending § 523 proceeding brought by the Sanderses. Judge Jacobvitz ruled that Debtors' debt to the Sanderses was non-dischargeable under § 523(a)(2)(A). Judge Jacobvitz

also found that the New Mexico Unfair Practices Act did not apply in the case, and therefore the treble damages award was inappropriate. However, he left it to the state court to decide whether to grant relief from the treble damages.

On October 31, 2016, the state court upheld the award of $45,000 in actual damages, but set aside the rest of the judgment, reserving jurisdiction to consider an award of punitive damages, costs, attorney's fees, and interest. The state court set a damages trial for May 16, 2017. The trial was stayed when Debtors filed this case on May 15, 2017.

The Sanderses filed a claim against Debtors for "$23,863.76*" on August 3, 2017. The asterisk states "actual damages only. Interest, punitive damages, costs, and attorney fees have yet to be adjudicated. The debt is not dischargeable." The Sanderses now seek stay relief to allow the state court to determine the additional damages.

## II.  DISCUSSION

A.  Modifying the Automatic Stay "For Cause"

1.  General. The Sanderses ask that the Court lift the automatic stay "for cause" under § 362(d)(1). The automatic stay is intended "to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts. The stay insures that the debtor's affairs will be centralized, initially, in a single forum in order to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *In re Curtis*, 40 B.R. 795, 798 (Bankr. D. Utah 1984), quoting *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 55 (2nd Cir. 1976). Nevertheless, bankruptcy courts may modify the automatic stay upon a finding of "cause" to do so. "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011),

overruled on other grounds, *TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011), quoting *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir. 1987). Such a finding is considered a finding of fact, reversible only upon an appellate court conclusion that "clear error" was committed. *In re JE Livestock, Inc.,* 375 B.R. 892, 893-94 (10th Cir. BAP 2007).

        2.        The Curtis Factors. The Tenth Circuit "has not set forth a precise framework or exhaustive set of factors for analyzing whether cause exists." *In re Gindi*, 642 F.3d at 872. Courts often turn to the 12 non-exclusive factors identified in *In re Curtis,* 40 B.R. 795, 799–800 (Bankr. D. Utah 1984), to assist in the analysis. *See, e.g., In re Busch*, 294 B.R. 137, 141 (10th Cir. BAP 2003) ("Twelve factors were identified in [*Curtis*] as some of the issues a bankruptcy court might consider when determining whether to lift the stay to permit pending litigation in another forum."). The "*Curtis* factors" are: 1. Whether the relief will result in a partial or complete resolution of the issues; 2. The lack of any connection with or interference with the bankruptcy case; 3. Whether the foreign proceeding involves the debtor as a fiduciary; 4. Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; 5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; 6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; 7. Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; 8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); 9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); 10. The interest of judicial economy and the expeditious and economical determination of litigation for the parties; 11. Whether the foreign proceedings have progressed to the point where the

parties are prepared for trial; 12. The impact of the stay on the parties and the 'balance of hurt.' 40 B.R. at 799-800.

3. <u>Factors the Court Deems Most Relevant</u>. The problem with the *Curtis* factors is that factors 3, 5, 6, 7, and 8 are often irrelevant. Further, certain factors not listed in *Curtis* often are relevant. When a creditor asks for a modification of the automatic stay so it can liquidate its claim in another (usually state) court, the Court considers the following factors most relevant:

i. <u>Specialized Tribunal</u>. Bankruptcy courts often defer to specialized tribunals to determine disputes involving divorce; child custody; probate proceedings; government contract claims; social security disability claims; and workers' compensation claims.

ii. <u>Estate Administration</u>. Would granting stay relief hinder or delay administration of the estate?

iii. <u>The Claims Allowance Process</u>. Allowing or disallowing claims is a core bankruptcy function. *See* 28 U.S.C. § 157(b); 11 U.S.C. § 502. The Supreme Court recognized that "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp*, 498 U.S. 42, 44, (1991) (per curiam) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 (1989)). The Second Circuit similarly noted that "when a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it was a prepetition contract claim arising under state law." *S.G. Phillips Constructors, Inc. v. City of Burlington, Vermont (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 704 (2d Cir. 1995) (*citing Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.)*, 896 F.2d 1384, 1389-90 (2d Cir. 1990)).

> The filing of the proof [of claim] invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the

> rights of the claimant to vote on the proposed distribution. *Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy*. Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim.

*Manville,* 896 F.2d at 1389-90 (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)) (emphasis in original). Given the centrality of the claims allowance process to the bankruptcy system, the Court's inclination in these matters is to keep the stay in place and liquidate the claim.

    iv.    <u>Judicial Economy</u>. Would lifting the stay promote judicial economy? Does one court have a busier docket than the other? Would judicial effort have to be duplicated?

    v.    <u>Litigation Expense</u>. Would it be cheaper for the parties to litigate in bankruptcy court or the other tribunal?

    vi.    <u>Prejudice to other Creditors</u>. Would lifting the stay potentially prejudice other creditors for any reason?

    vii.    <u>Likelihood of Success</u>. How likely is the creditor to prevail on its claim?[1]

    viii.    <u>Balance of the Hurt</u>. Is there some reason, not taken into account by the above factors, that either the creditor or the estate would be prejudiced by lifting the stay or keeping it in place? One example would be if the dispute involved third parties who were not subject to

---

[1] *See In Re Gindi*, 642 F.3d at 872-73 (using a three factor test: "(1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) *the merits of the moving party's underlying claim.*" (emphasis in original). The court in *Gindi* stated: "[W]e do identify one factor that can be dispositive in determining whether a party can successfully move for relief from the automatic stay under § 362(d)(1)—namely, the likelihood that the movant would prevail in the litigation if the stay were lifted." *Id.* at 872.

bankruptcy court jurisdiction, so that, if the stay were not modified, the creditor could be subject to inconsistent judgments.

B. <u>Weighing the Factors</u>.

The Court weighs the eight factors as follows:

| Factor | Discussion |
| --- | --- |
| 1. <u>Specialized Tribunal</u> | The Sanderses' claim is not the type adjudicated by a specialized tribunal. |
| 2. <u>Estate Administration</u> | Stay relief could delay estate administration. The timing of the confirmation of Debtors' chapter 13 plan will be heavily affected by the outcome of this litigation. The quickest way to liquidate the Sanderses' claim is in bankruptcy court. |
| 3. <u>Claims Allowance Process</u> | The Sanderses filed a proof of claim, but ask that another court rule on the proper claim amount. The proposed process is irregular. Further, chapter 13 plans are supposed to be confirmed promptly. Because of that, it is incumbent upon the Court to issue any pre-confirmation rulings on claims, if necessary for confirmation. |
| 4. <u>Judicial Economy</u> | The bankruptcy court is the most efficient and fastest venue for determining the Sanderses' claim against Debtors. The state court may take several months to schedule the matter. The bankruptcy court (Judge Jacobvitz) already held a trial on the merits of this claim. It should be a simple matter for the Court to determine the balance of the claim. |
| 5. <u>Litigation Expense</u> | It should be no more expensive to have a claim allowance trial in this Court. Judge Jacobvitz already made extensive factual findings in this case, which are binding on the parties. The state court has not yet had an evidentiary hearing. |
| 6. <u>Prejudice to other creditors</u> | A large judgment against Debtors would reduce the payment to other creditors. When considering punitive damages, bankruptcy courts are well-positioned to weigh the effect of such damages on other creditors. |
| 7. <u>Likelihood of Success</u> | It is likely that the Sanderses will obtain some amount of additional monetary judgment. |
| 8. <u>Balance of the Hurt</u> | There does not seem to be any significant harm or prejudice to either party that was not discussed above. There are no third parties. |

Overall, the aforementioned factors weigh against lifting the automatic stay. The Court finds no compelling reason to have the state court liquidate the Sanderses' claim. This Court can do so as easily, and at least as quickly, with no loss in judicial economy or additional expense. By

doing so, the Court would simply be discharging its core claims-allowance duty. Further, Judge Jacobvitz has already conducted a lengthy trial, made findings of fact, and published an opinion involving these parties. The findings should make the claims allowance process quick and efficient.

### III.     CONCLUSION

The Court concludes that there is insufficient "cause" to modify the automatic stay. By keeping the stay in place, the Court can quickly determine all remaining issues between the parties.

The Court will enter a separate order denying the stay relief motion.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered:  February 20, 2018

Copies to: counsel of record